Good afternoon. May it please the Court, my name is Jim Bobb. I represented the student group and students below. This case involves important First Amendment rights of students in student elections, important due process rights when students are punished for violating student election codes, and whether a university can violate these rights with impunity by simply temporarily repealing the unconstitutional laws after the students have been found to have violated them and after suit. For purposes of analysis, I think we can lump our claims into two groups. First is the provision that prohibits distribution and posting of slates by student groups at the University of California at Santa Cruz and the subsequent finding by the Election Commission that the students and student group violated that provision but in a hearing which did not afford them due process. The second is the spending limit which was imposed upon candidates for student government which the students obeyed and later filed suit against. Now with respect to the slate provision and due process, the student group here below published a slate, posted it throughout the campus prior to the election, the student election, endorsing three candidates. A complaint about that slate was filed with the Elections Commission and the Election Commission convened a secret meeting to consider that complaint and to consider whether or not the students violated that provision. There was no notice to the students about the convening of this hearing and no offer of an opportunity for them to be heard when their fate was being adjudicated. In fact, a representative of the student group appeared at the room in which the hearing was being conducted behind closed doors, asked to participate in the hearing, and was barred. A subsequent e-mail was received by the students and student groups that held that the flyer was illegal under the anti-slate provision, held that the candidates, the three candidates mentioned in the slate, were equally liable and responsible for the flyer, and ordered that the flyer be taken down or the students would be subject to disqualification. Are you arguing that you're applying for damages here in connection with that misconduct? Our request is twofold as to the slate. A declaration that the students' conviction for violating the election code was in violation of the First Amendment of the U.S. Constitution and the Due Process Clause of the Constitution. So a vindication, a declaration that their conviction was unconstitutional. And secondly, an order of the expungement of the records of their conviction. Counsel, is that conviction in the record? Is it in the records? Yes. Yes, it is. You will see copies of the two e-mails that were sent to the students in the record, ER 242-243 and also ER 251. So is your position that those e-mails constitute convictions under the Code of Conduct? Well, that's what they say. I mean, they say that they have found that the distribution of the flyer was illegal. They say that the ‑‑ Isn't that a little different than a conviction under the Code of Conduct, which generally involves a hearing and an adjudication? Well, this was the hearing and the adjudication, not under the Code of Conduct, but under the election law. Under the election code? Under the election code. So it's your position that in order for a violation of the election code to be found, it was simply done by fiat? Well, the elections commission is empowered to determine whether or not the elections code is violated. Well, see, I thought you said there was a conviction, which intimates or implies something more than a characterization of something that's illegal. Well, it was a ‑‑ well, I guess that's in the eye of the beholder. It's a finding after a meeting of the body that is entitled to adjudicate the question that an election law violation had occurred. They called it illegal under the elections code. Are you saying there's something in their file, in their student file that needs to be expunged? I guess I'm a little confused about what it is that you're asking. You're asking for an expungement of an e‑mail? Well, no, yes, both the e‑mail and any other records that exist with the elections commission or the student government. Now, the university defends by saying that there is no USCS disciplinary records. Well, we're not talking about some university disciplinary file. We're talking about actions of the student government through their elections commission. And this was dismissed. So, you know, before discovery, et cetera. But we have in the record the findings, the findings of illegality, the orders to remove the particular flyers. So at least we know, you know, that these records exist, but because no discovery was conducted, because this case was ‑‑ I don't understand. Is that with respect to an election that's already taken place? Yes, yes. The election occurred a few days later. And, of course, the flyers were taken down. We want here. We want a declaration that the finding that they had violated the elections code was unconstitutional because it violated due process, and the provision that it was based on is a violation of the First Amendment. And, secondly ‑‑ Change. You said that there's been a temporary change. How long has the new election code or provision been in effect? How long does it have to be in effect to not be temporary, in your view? Well, it's ‑‑ it went into ‑‑ the new code went into effect in January of 2003. The reason I say it's temporary is that the university and the student government involved have repeatedly said that they intend, if at all possible, to reenact this provision. If it becomes legal. Well, no. What's wrong? What's wrong? If there is an opinion of the general counsel of the university that such a provision may be enacted. Where do you sign to in the record to support that statement that you just made? Well, if you look at ER3, when they adopted the interim code, this is the declaration of Hernandez. The interim code, which removed the slate provision and the spending provision, they explain in paragraph six that they believe that the ‑‑ they say it's interim because they strongly believe the spending limits are important, and they say that they will not allow future student elections to be conducted with a spending or candidate slate absent a change in law that in the opinion of the university office of general counsel permits such provision. Now, the history, of course, is this is 2002. In 1976, the U.S. Supreme Court said spending limits are unconstitutional. In 2001 ‑‑ And we've been litigating it ever since. Excuse me? And we've been litigating it ever since. And in 2001, some of these very same defendants were sued. The office of general counsel defended in a case called Welker, where the district court judge declared that an identical spending limit in a student election was unconstitutional. And there have been at least a half a dozen courts of appeals decisions which have reaffirmed that spending limits are unconstitutional. What exactly is it? So the university says we acknowledge that the cases say that we can't impose this limit, so we're not going to ‑‑ But that was after suit. That was after it was brought to their attention. After a district court judge had already declared it. So you're going to keep litigating it and litigating it and litigating it after they say that we're not ‑‑ that we've lost? Why didn't they repeal it? When a district court judge that they did not even appeal had declared spending limits for the University of California college system to be unconstitutional. I mean, it required these students to file suit. But, counsel, we don't have a case of controversy here, do we? Yes, we do. We have records we want expunged, and we have a finding that they violated the election code that we want to be declared invalid. But we went around about the records, which turned out to be an e‑mail. Now, isn't there an immunity problem when you say you want a declaration that they violated their rights in the past? No, because we're not asking for damages. So we're asking for a declaration that their conviction, if you will, of violation of the election code was unconstitutional. And as this court ‑‑ Isn't that an advisory opinion at that point? If the ‑‑ if it's no longer in effect? The conviction's in effect? I'm not convinced there's a conviction, to be honest with you. It says there was a conviction. It says there was a finding that they violated the election code. And they issued punishments to them. They required them to, in the dead of night, to remove the ‑‑ to remove it. And they say, of course, I mean, that they want to reenact these. And when you have a voluntary cessation of challenged conduct after suit is brought, you know, it is the defendant's responsibility. It's a heavy burden. Let's talk about what ‑‑ we all agree that if there is a policy in effect that is violating your client's rights, that we have ‑‑ that there is jurisdiction to consider an injunction against the enforcement of such a policy. Isn't that ‑‑ do we agree with that? We do agree that they have repealed, albeit in our view temporarily, the policies at issue. The question is, are these students going to be vindicated for having been found to violate the election code, and are they going to have their records expunged, or is this going to lurk in their record for the rest of their life when they apply for law school, when they apply to the bar, when they are up for Supreme Court appointment, that this is going to lurk in their records the rest of their life? Or are they going to be vindicated? That's the problem I have, is we're in the record. If someone, if they were up for Supreme Court, and a reference was sent to this university, where in the university archives would this information come out? Well, these e‑mails were sent to the students from the election commission. The election commission is an agency of the student government. This case was dismissed before further discovery could be conducted. So we do not know, other than it's not in the ‑‑ When you file a complaint, you have to file it after having conducted some investigation. So an e‑mail is not an official record in terms of a student's record. With all due respect, Your Honor, there's a lot of investigations going around the United States in which e‑mails are being discovered and are being used as evidence. As a record? As a record. As a student's record? As a record. This is no different than a letter. This is no different than a letter sent snail mail. This is identical and, in fact, is now being used much more frequently by lawyers and other people to communicate about important matters. And nobody can disclaim responsibility for an e‑mail. What is the e‑mail communicating about? What is the underlying record that we would find? The e‑mail says that the election commission met, determined that the flyer was illegal, found that the students who were named on it are responsible for the violation, and ordered that the illegal flyers and illegal postings be taken down or the candidates risk disqualification. That relates to the election that has taken place. Yes. Mr. Boffert, let me get back to Judge Schroeder's question about whether or not there are immunity problems in this case. Your answer was, well, we're not asking for damages. By that, I assume you're referring to ex parte young. But ex parte young, you know, only creates an exception for prospective relief, not for retrospective relief. It seems like what you want is to undo something that happened in the past. You're not asking for prospective relief. We're asking for a declaration. What happened in the past was illegal, right? Yes. The finding was illegal. You want some kind of remedy with respect to the past election. Isn't that retrospective relief? No, we want prospective relief, which is the expungement of records. Well, the way you phrase it, the way you phrase it, there is no such thing then as retrospective relief. What would be retrospective relief? Can you give me an example under your definition of, you know, perspective? Everything would be perspective under your definition, wouldn't it? Well, it doesn't make sense. No, because we're asking for something to be done in the future. I asked you again, hypothetically, tell me then under your definition of prospective relief, what wouldn't be perspective? What would be retrospective? What would what would be retrospective? Yes. Nothing. Yes. What? Well, vitiating a fire, a former action like, for instance, arguably invalidating an election would be retrospective. And invalidate invalidating a past conviction is not. We're not invalidating it. We're having a declaration that it was unconstitutional. But how is that different from invalidating an election? This happens every day in civil rights cases. The government acts adversely towards you. You ask for a declaration. Show me what they did to you. You're harassed. I'm going to ask you to draw on this question. What is your best case that that we're saying the proposition that this kind of relief that you're asking for is prospective? Hatter versus Los Angeles City High School District four fifty two federal second six seventy three. Ninth Circuit. Nineteen seventy three. Which held that a that as long as records of a high school disciplinary action were not expunged, that even though the policy had changed, that the case was still alive and that expungement could be ordered by the court in order to vindicate. Well, let me ask you this. The violation that occurred. I'm not familiar with that case, but was the issue of 11th Amendment immunity raised in that case? I don't know. Well, probably not. I just don't know of an 11th Amendment issue to declaration before the Supreme Court took us down the road that we have to. Well, well, I mean, there are there are nearly every case civil rights case. And this is what this is involves declarations of constitutional. Most of those cases are against local officials, not state officials. They can be against state officials. Well, only if you can get around the 11th Amendment. That's we're trying to find out whether you've done so in this case or not. There is to me you haven't. California Pro-life Council versus Getman. The Ninth Circuit declared that Proposition 208 passed by the voters of California was unconstitutional. So it was a declaration that a law was unconstitutional. That's to prevent future enforcement. That's perspective, clearly. Well, I ask for perspective relief. What are they doing that's hurting you today? That you're hurting your client? What is hurting them? What's happening to your clients today? Nothing today that they know of. Well, also, what they fear is illegal. Then there's no perspective relief you can get. If there's nothing being done to your client, there's no perspective relief you need or you can get. But what is being done to my clients today? You just said nothing. No. Well, I'm trying to answer your question. That's what I heard. Well, you know, maybe interpreted the way I understood her question, but not the way you understood it. And what is happening is that they have been found by the student government to have committed a violation of the election code. They do not know the effect that that is going to have on their future life. But they are under a cloud because of that finding. And it was unconstitutional. We had this possible cloud from what happened yesterday. Now, we agree that there is no policy now in effect that is affecting your client's rights. Yes. Okay. So maybe we should let you reserve the rest of your time. Thank you. And enter from the other side. May it please the Court. I'm Christopher Patty on behalf of the appellees. The question before the Court is whether or not the plaintiff's challenges to these repealed statutes are and provisions of the elections code are moot. And the first thing I'd like to address is the issue of expungement of records, because that seemed to be the issue that was concentrated on most during the appellant's argument. The case that the appellant cites as his best case, the Hatter case, is a case in which personal disciplinary records, which might be the basis of subsequent action, were placed in the file of a student. And the Court in that case said that given the existence of those records in the student's file, there is the potential of ongoing injury to that student. And for that reason, we can look at it and determine whether or not those records ought to be removed. Who was the defendant in that case? The defendant in that case, I believe was the local school district. I believe it was a local school district. There were a number of, right. And it's similar to the case that we heard just a few minutes ago, where there were disciplinary records in the prison records. The plaintiffs allege that such records exist in their complaint, and they refer to the student's disciplinary code, which does allow, as one of the potential measures of discipline, to put a record in the student's disciplinary record. But let me ask you this. If that were to occur, would it typically occur through the e-mail scenario that we saw? No, Your Honor. And what the declarations that are in the record and were before the Court below and are before this Court indicate is that the student disciplinary system and those disciplinary records have absolutely nothing to do with the enforcement of the Elections Code. The enforcement of the Elections Code and the Election Commission can only enforce the Election Code with respect to the pending election to say there's some violation of the Election Code being committed now, and that needs to be fixed in the context of the pending election. The evidence that the plaintiff is talking about here aren't disciplinary records, as that term is used in Hatter and all the other cases that they cite that deal with disciplinary records. It's simply evidence of a past event, evidence that there was a finding in the past of a violation of the Election Code. And what the plaintiffs are apparently asking be done is that that evidence of a past event be obliterated so we don't know anything about what happened back there. I'm not sure that's even possible given the public record that we have now in this case. But it is not the same thing as the removal of a disciplinary record in the personal file of a student as existed in the Hatter case. But what would happen when Mr. Burkhardt is up for the United States Supreme Court and that e-mail surfaces? That's counsel's articulated concern. Well, there may be many things about Mr. Burkhardt's past that might surface under those circumstances. But the fact of the matter is there is no disciplinary record at the university. What you're talking about is evidence of an historical event that happened in the past. That could surface through that e-mail. It could surface through the testimony of people who were there. The typical question, has any bar association ever disciplined you, you would say no. Has any academic institution ever disciplined you, you would say no. He would truthfully say no. That's right. And if someone wanted to go back to the disciplinary records of the University of California and check that, it would confirm it, or at least I don't know whether he's been disciplined for anything else. What if it goes through the records of the student government? The records of the student, I mean, there may be an e-mail somewhere. Actually, we know there's an e-mail somewhere. It's in the record here. But the fact of the matter is that the situation is not going to change with respect to evidence of historical events by any order that the district court is able to give. So now I'd like to go back to, I think, the other point that was raised, the question as to whether or not there's been only a temporary repeal of the provisions that are under challenge here. And there's a long line of case law that says that if a challenge provision is repealed, then the case becomes moot. There are some exceptions to that. It is true. In fact, there are three, I think, that you can see in the cases. One is if the repeal did not fully eliminate the objectionable practices. That's not the case here, and the plaintiffs are not claiming that it is. A second is that the plaintiff is still subject to prosecution under the repealed statute. That's the Jacobus case that was brought to the Court's attention after briefing closed. And, of course, here there's no possibility of prosecution for past violations because it's not a criminal offense. And then finally, if it appears that the statute will be reenacted, then there's the possibility that the case is not moot. And the cases that apply this are the Alladin's Castle case, which has been cited throughout the briefs, the Associated General Contractors v. Jacksonville, Charles V. Daly, and a number of others that are cited in the briefs. In all those cases, really, it depends on the fact that the amendment is made rather late in the game. That's right. Maybe a little later than in this case, but in this case it was kind of late, wasn't it? Well, actually, if you look at all the cases that I have found from this circuit in which there's been a rejection of mootness on the grounds that there's been where there was a repeal. In all of those cases, there were circumstances where the district court had already actually decided the merits of the case, the case was on appeal, and then there was a repeal of the case was on appeal, and then there was repeal of the challenged provision while the case was on appeal. And yours is not that late. Pardon me? In this case, it's not that late. No. It's not nearly that late. And that's an important factor. As the Court in the Jacobus case indicated, the Supreme Court in the Friends case said one of the issues here is a practical one. Does the repeal come so late in the game that we've already spent all this time and effort deciding the merits of the case, and therefore it doesn't really save us any time to finish off the appeal or make the final decision? But the repeal came after the lawsuit, right? It came after the lawsuit, but before the district court. So why doesn't opposing counsel's voluntary cessation argument carry the day? Well, the reason that that doesn't carry the day is that this Court said in the Native Village case, which is cited extensively in the briefs, voluntary cessation usually is not enough to moot a case unless it's clear that the challenged conduct is not going to recur. But one of the things that makes it clear that the challenged conduct is not going to recur is if the statute that the enforcement at the challenged enforcement actions are based on has been repealed. You know, I know there's a state case law that says, well, a regulation of the region should be treated like a statute. But the fact is, you know, like this kind of regulation is reenacted, we'll say, much more easily than a, you know, I'll call it an ordinary statute that has to go to legislature, right? Well, I would actually say that's not the case, because here we have not only a commitment in writing by the legislative body, which is the student council, which enacts these provisions, that says we're not going to enact it again. But you also have the dean of students, the administration of the university, who sits over them saying we're not going to allow an election to go forward if these kinds of provisions are reenacted. But what about opposing counsel's argument that that's all of that subject to an opinion from legal counsel for the university saying it's okay to do it? That's right. From us saying if the law changes, if Buckley v. Vallejo is reversed, we're going to, you know, maintain the possibility of conforming to the new law. That's what those declarations say. I don't think that's going to happen. It hasn't happened yet. We don't foresee that happening. But, you know, there were cases proceeding up to the Supreme Court on the most recent revisions to federal campaign financing law. Your interpretation of the memorandum of understanding is a little different, because opposing counsel characterized it as an intent to reenact the regulation. No, it's quite clear in there that there is not an intent to reenact it, unless the student counsel has been advised by the general counsel's office of the University of California that the law has changed in such a way to allow it. So there's a recognition, an explicit recognition of the current case law of Buckley and the Welker case, and a statement that as long as that law remains in effect, we're not going to reenact these regulations. So unless there's anything else, I'm going to. Thank you. Bob? You know, the students I represent take the university rules seriously, and then they take their reputation seriously. I'm sorry. I thought you left. I'm sorry. You disappeared. Let's go some height challenge. Sorry about that. I didn't mean to be speaking when you were down. Sorry about that. The students that I represent take the university rules seriously, and they take their reputation seriously. When they are found to have violated a university rule, they're concerned about their reputation. And we are not talking about this peculiar use of the word disciplinary that the university is relying upon. How about a question, have you been found to have violated any university rules? These students would be required to say yes, they violated the elections code. Now, if this case is determined not to be moved so that you can go to the merits, we get a merits determination, don't we, that that finding of violation of the election code was unconstitutional. Now, what happens if you affirm? Well, then they are found to have violated the elections code, and they have this on their reputation for the rest of their life. Now, the university does retain the power and has conferred that power, continues to confer that power on the student government to elect spending limits. Look at ER 9. This is the University of Santa Cruz policies and procedures governing campus elections. And it says under subsection 6.1, it said that student union assembly has the power to adopt, quote, campaign spending limits, end of quote. In the memorandum of understanding found at ER 289, the student assembly states, quote, believes strongly that campaign spending limits are important to assuring the fairness and equity of student elections. That's why there is an intent to reenact. Bob, you have used your time. Thank you. I was going to say counsel, but don't they recognize that Buckley v. Vallejo does limit the ability to impose those limits? Why do they adopt them, then? Buckley v. Vallejo was decided in 1976. They're important, but we recognize we can't do it, in all fairness, if you want to characterize it. Why didn't they repeal it in 2001? Mr. Bob, you have used your time. I hope you will tell your friends. I was just answering the question. Thank you. I hope you will tell your friends in Indiana that we had the best San Francisco weather for you. Thank you very much. The case just argued is submitted for decision. Shall we move forward? Sure. Okay, we'll go ahead and hear the last case on the calendar, United States v. Bogot.
judges: Schroeder, Tashima Rawlinson